IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

REBECCA LITTLETON,

   Plaintiff

v.     CIVIL NO. JKB-17-3164

J. CHARLES SMITH III,

   Defendant.

## MEMORANDUM

Plaintiff Rebecca Littleton originally brought this action against Frederick County ("the County"),[1] the State of Maryland ("the State"), and Frederick County State's Attorney J. Charles Smith III ("Defendant Smith") in the Circuit Court for Frederick County on September 29, 2017. (Notice of Removal, ECF No. 1.) The case was removed to this Court and on February 28, 2018 the Court granted a motion to dismiss brought by the County and granted in part and denied in part a motion to dismiss brought by the State on behalf of itself and Defendant Smith. (*See* Order, ECF No. 35.) The upshot of the Court's February 28 order was that the County and the State were dismissed as parties to the action, and all but one claim against Defendant Smith were dismissed. The Court ordered Defendant Smith to answer this one remaining claim—a breach of contract claim—in the time allotted under Federal Rule of Civil Procedure 12(a)(4). Defendant Smith did so (*see* Ans., ECF No. 37) but also brought a motion for reconsideration on March 7, 2018 (ECF No. 36). Plaintiff opposed the motion for reconsideration (ECF No. 38) and also brought a motion for leave to file a second amended complaint (ECF No. 39). Defendant Smith

---
[1] Plaintiff had named Frederick County Executive Jan Gardner in her complaint, but substituted the County as party in her first amended complaint.

replied in support of his motion for reconsideration (ECF No. 41) and responded in opposition to Plaintiff's motion for leave to amend (ECF No. 42). The County, even though it had been dismissed as a party to this action, also responded in opposition to the motion for leave to amend (ECF No. 40), as Plaintiff sought to reassert claims against the County in her second amended complaint that had been dismissed. Plaintiff has not replied in support of her motion to amend and her time for doing so has expired.

Defendant Smith's motion for reconsideration and Plaintiff's motion for leave to amend are therefore ripe. There is no need to hold a hearing to resolve either matter. *See* Local Rule 105.6 (D. Md. 2016). The Court misapprehended the nature of Defendant Smith's legal argument and will therefore reconsider its decision of February 28, and dismiss the breach of contract claim against Defendant Smith, thus dismissing Plaintiff's amended complaint in its entirety, by accompanying order. The Court finds that Plaintiff's proposed amendments would be futile and therefore will deny Plaintiff's motion for leave to file a second amended complaint by accompanying order.

**I.    *Background***

The following facts are recited from the Court's memorandum opinion of February 28, 2018, which itself drew on Plaintiff's allegations in her first amended complaint:

> In 2014, Plaintiff was working as a Victim Witness Coordinator at the Frederick County State's Attorney's office ("SAO"). That year, she supported "former State's Attorney Rolle" in his campaign for Circuit Court Judge. Defendant Smith, the current Frederick County State's Attorney, "chastised" Plaintiff for "expressing her support" for Rolle in the election.
>
> Soon after being "chastised" Plaintiff sent emails using her work account. They covered two topics. First, Plaintiff vented some frustration about how Defendant Smith's religious stance on abortion had affected a child (presumably a victim, and presumably a victim Plaintiff worked with). The second topic of these emails was a more general frustration with Defendant Smith, including "disparaging comments about Defendant Smith in his capacity as State's Attorney." As a result

2

of an "internal investigation unrelated to Plaintiff, Defendant Smith became privy to Plaintiff's email correspondence." [. . .]

On May 26, 2015, Plaintiff "was invited to a meeting in Defendant Smith's office," where she was shown a letter signed by Defendant Smith ("the May 26 letter"). This letter stated the following: Defendant Smith and others were notified by Human Resources of a complaint regarding "improper use of [SAO resources]." They then conducted an investigation, covering Plaintiff's use of work email and access to various specific databases. During this investigation, "it was discovered that [Plaintiff] engaged in numerous violations of the Frederick County Technology Use Policy and SAO protocol [including] misuse of information systems; a lack of trustworthiness, and pervasive conduct unbecoming the Office of the State's Attorney and Its employees." The Letter informed Plaintiff that because of these issues, her "at-will employment [was] terminated."

Plaintiff "vehemently denied the accusations, based primarily on the fact that she lacked any practical access whatsoever to any of the databases listed in Defendant Smith's letter," a state of affairs confirmed by Deputy State's Attorneys who were in the meeting. Plaintiff does not allege that she denied improperly using SAO resources, that she lacked trustworthiness, or that she engaged in behavior unbecoming of the SAO. Based on Plaintiff's corroborated denial regarding database use, however, Defendant Smith "reconsidered his decision to terminate Plaintiff." Defendant Smith "also notified Plaintiff for the first time that he had read her 'venting' emails with disparaging statements about him contained therein."

At some point, Defendant Smith "disclos[ed] . . . the true rationale behind Plaintiff's termination." [. . . .] [O]nce Plaintiff knew this "true rationale" she "knew that her employer-employee relationship with [the SAO] had been irreparably harmed." Defendant Smith then made Plaintiff an offer, which she accepted. Under the terms of this deal "the SAO agreed to allow Plaintiff to resign her position in consideration of their agreement to provide a good letter of recommendation, sanitize her personnel file of all accusations regarding impropriety, and ensure that no future employers are aware of those inaccurate accusations contained in Defendant Smith's initial termination letter."

After this meeting, County Human Resources Director Mitch Hose prepared a document that appears to be a boiler-plate human resources form, cataloging the nature of Plaintiff's departure from the SAO. Under "Termination Reasons" the space next to voluntary resignation is checked. It notes that Plaintiff accrued paid leave, and that Plaintiff is not eligible for rehire by the County. On the second page there are some scribbled notes that are largely unintelligible and appear to reference sick and annual leave. After resigning from the SAO, Plaintiff was unable to find work for two months. She lost her ability to begin collecting her

> County pension at 52, and now has to wait until the age of 65, and cannot reinvest in the County pension plan.
>
> Ultimately, Plaintiff was able to find new employment in the Staff Judge Advocate's office on Fort Detrick in Frederick, Maryland. This position required her to "fill[] out a questionnaire" so she could obtain security credentials. This questionnaire asked "During the last 5 years . . . did you leave any job by mutual agreement because of specific problems . . . ?" Plaintiff answered "no." "During a routine background employment check . . . the State Defendants filled out [a form] indicating that Plaintiff 'resigned after informed of possible discharge.'" Additionally, someone sent the May 26 Letter to her current employer.
>
> In March 2016, after obtaining this information from the SAO, the Department of Defense ("DOD") "issued a Statement of Reasons expressing concerns about Plaintiff's continuing eligibility for . . . credentials." In June 2016, Defendant Smith sent an email to the DOD, stating that Plaintiff had used her work email for personal business but "did not personally or directly access any other databases or resources, or allow others to use her credentials for such access."
>
> On November 17, 2016 a hearing was held before an Administrative Law Judge ("ALJ") to determine Plaintiff's eligibility for credentials. Plaintiff does not allege that any of the Defendants were present, or performed any action at this hearing. DOD counsel did not mention Defendant Smith's June 2016 email, but Plaintiff had a copy. Upon learning of this email, the ALJ found that "Plaintiff had potentially misused her work email to conduct personal business, but that this instance of that conduct did not rise to the level of affecting Plaintiff's credentials." Ultimately, the ALJ "ruled that Plaintiff did not deliberately falsify her declaration for federal employment" and that any improper conduct Plaintiff engaged in in the past should not prevent her from receiving her credentials. Plaintiff retained her credentials, and continues to work at Fort Detrick.

(Mem. 2-6, ECF No. 34 (citations and footnotes omitted).)

Based on these allegations, Plaintiff brought a lawsuit in Maryland state court that was later removed to this Court, after which she amended her complaint. In her amended complaint, Plaintiff brought four claims against three defendants: she brought what the Court construed as a First Amendment retaliation claim against Defendant Smith and the County; a negligence claim against the State only; what the Court construed as a negligence claim against Defendant Smith only; and a breach of contract claim against the County, the State, and Defendant Smith. All

4

defendants moved to dismiss Plaintiff's amended complaint in early December of 2017.[2] The Court granted the majority of the Defendants' requested relief in an Order signed February 28, 2018. Specifically, the Court dismissed all claims against the County and all claims against the State, and explicitly dismissed them as parties to this action. The Court dismissed the First Amendment retaliation and negligence claims against Smith. It denied the State's motion to dismiss in part, however, and ordered Smith to answer Count Four, Plaintiff's breach of contract claim.

The Court will discuss its reasoning behind the February 28 order in greater detail below, but will quickly lay out the basics of its opinion here. The County was dismissed because Plaintiff did not allege that the County had engaged in any actions relevant to her case (Defendant Smith, as a State's Attorney, worked for the State). The State was dismissed because Plaintiff had failed to satisfy the statutory requirements necessary to overcome the State's sovereign immunity. Specifically, Plaintiff had failed to comply with the requirements of the Maryland Tort Claims Act (requirements that are necessary to bring a tort claim against the State), and had failed to allege the presence of a written contract, which is necessary to bring a contract claim against the State. The Court dismissed Plaintiff's First Amendment retaliation claim against Defendant Smith on the ground of qualified immunity. Plaintiff had failed to allege facts demonstrating that Defendant Smith violated Plaintiff's clearly established right to engage in protected speech. The Court dismissed Plaintiff's negligence claim against Defendant Smith because Defendant Smith was entitled to immunity under Maryland law unless Plaintiff plausibly alleged facts that constituted gross negligence or malice, which she did not do.

The Court did not dismiss Plaintiff's breach of contract claim against Defendant Smith. The State had argued that Plaintiff had never alleged Defendant Smith himself entered into a

---

[2] The State moved to dismiss on behalf of itself and Defendant Smith.

contract, but it appeared to the Court that the State had misread Plaintiff's complaint; she *did* allege that Defendant Smith himself had entered the alleged contract. (*See* Mem. at 21-22.) For that reason (and because the State incorrectly asserted the statute of frauds as a defense and because no immunity appeared to apply to Defendant Smith's individual actions) the Court denied the State's motion to dismiss in part and ordered Defendant Smith to answer Plaintiff's breach of contract claim.

On March 7, 2018, Defendant Smith moved for reconsideration of the Court's opinion. Plaintiff moved for leave to file a second amended complaint on March 27. The County, no longer a party to this case, responded in opposition to the motion for leave to amend on April 2, 2018. Defendant Smith replied in support of his motion to reconsider on April 6, and responded in opposition to Plaintiff's motion to amend on April 9. Plaintiff did not reply in support of her motion to amend, and her time for doing so has expired. Therefore, Defendant Smith's motion for reconsideration and Plaintiff's motion to amend her complaint are ripe for review.

**II.** *Standards*

Under Federal Rule of Civil Procedure 54(b), a district court may revise any decision before an entry of final judgment. Motions for reconsideration of interlocutory orders "are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-515 (4th Cir. 2003). "In considering whether to revise interlocutory decisions, district courts in this Circuit have looked to whether movants presented new arguments or evidence, or whether the court has obviously misapprehended a party's position or the facts or applicable law." *Cohens v. Md. Dep't of Human Res.*, 933 F. Supp. 2d 735, 742-43 (D. Md. 2013) (internal quotation marks and citations omitted).

After a party has amended her pleading once, she "may amend [her] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court "should freely give leave when justice so requires." *Id.* The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three situations: when the opposing party would be prejudiced, when the amendment is sought in bad faith, or when the proposed amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). A proposed amendment is considered futile if it cannot withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

### III. *Analysis*

The Court will first consider Defendant Smith's motion for reconsideration, and then turn to Plaintiff's motion for leave to amend.

#### a. *Motion for Reconsideration*

On the final page of the State's motion to dismiss, it wrote:

> Finally, in Count Four, Ms. Littleton makes no allegation that any alleged contract was formed between her and State's Attorney Smith in his individual capacity. Ms. Littleton alleges that her contract was between her and her "employers." ECF 18, ¶ 58. Beyond failing to name State's Attorney Smith as a party to the contract, Ms. Littleton alleges that any potential contract was formed in his role as employer of staff at the State's Attorney's Office, which is a duty assigned to State's Attorney Smith by statute. Crim. Proc. § 15-411(d).

(State Mot. Dismiss Mem. Supp. at 21.) But Plaintiff did not, in fact, "allege that her contract was between her and her 'employers'" as the State averred. The paragraph of Plaintiff's amended complaint that the State cited reads in full:

> During the timeframe surrounding Plaintiff's resignation from the SAO, Plaintiff and the State Defendants entered into a binding agreement (verbal or not) by which the SAO agreed to allow Plaintiff to resign her position in consideration of their agreement to provide a good letter of recommendation, sanitize her personnel file of all accusations regarding impropriety, and ensure that no future

> employers are aware of those inaccurate accusations contained in Defendant Smith's initial termination letter.

(Am. Compl. ¶ 58.) The only use of the word "employers" referred to potential "*future* employers." So, the State's use of quotation marks confused the Court: it appeared that the State had simply misread this paragraph and assumed that Plaintiff alleged that her contract was between her and her employers, when, it seemed, she had actually alleged that her contract was between her and the "State Defendants," a defined term that included the State and Defendant Smith.

In Defendant Smith's motion for reconsideration, he explains that the State's characterization of Plaintiff's allegations was not so much a *mis*characterization, as an intentional, if somewhat unclear, argument that although it may *appear* that Plaintiff alleged the formation of a contract between her and Defendant Smith in his individual capacity, she functionally alleged the formation of a contract between her and Defendant Smith in his *official* capacity. Defendant Smith correctly notes that Plaintiff alleged that Defendant Smith was "a state actor while acting in the scope of his employment." (Am. Compl. ¶ 4.) All of Defendant Smith's alleged actions in this case occurred while he working, and in fact seemed to have occurred at his place of employment. All of Defendant Smith's alleged actions concerned Plaintiff's employment at the SAO, which, as the State correctly noted, "is a duty assigned to State's Attorney Smith by statute." (State Mot. Dismiss Mem. Supp. at 21 (citing Md. Code Ann., Crim. Proc. § 15-411(d).)

Having further considered the State's memorandum in support of its motion to dismiss, as well as Plaintiff's amended complaint, the Court finds that Plaintiff did in fact allege that Defendant Smith was acting in his official capacity when he allegedly entered a contract with Plaintiff. The Court therefore finds that it had misapprehended the state's position in its

February 28 opinion, and will accordingly grant Defendant Smith's motion for reconsideration. *Cohens*, 933 F. Supp. 2d at 742 (internal quotation marks omitted). It will dismiss Defendant Smith from the case by accompanying order for the same reason that it dismissed the breach of contract claim against the State, i.e. Plaintiff did not allege the existence of a written contract necessary to overcome sovereign immunity (and it appears that the claim was not brought within one year of any alleged breach). (*See* Mem. at 12-13.) As Defendant Smith was the sole remaining defendant (and, as will be discussed, the Court finds Plaintiff's proposed amendments to her complaint to be futile), the order accompanying this memorandum will dismiss Plaintiff's amended complaint in its entirety and close this case.

Plaintiff's opposition does not change the Court's mind. Plaintiff's one page, two paragraph opposition simply states in the first paragraph that Defendant Smith's motion "contains no additional facts or legal arguments sufficient to persuade the Court to modify [its] decision." (Opp'n Mot. Reconsider 1, ECF No. 38.) But Defendant Smith need not present any new facts or legal argument in order to persuade the Court to modify its decision. Defendant Smith persuaded the Court to modify its decision by demonstrating that the Court, due perhaps to the inadvertence and excusable neglect of Defendant Smith, had misapprehended Defendant Smith's position. In Plaintiff's second paragraph, she writes: "To the extent relevant, Plaintiff intends to file a Motion for Leave to File Second Amended Complaint on or before Monday, March 26, 2018." (*Id.*) As best the Court can tell, that is not relevant to its consideration of Defendant Smith's motion for reconsideration.

Plaintiff's motion for leave to amend may be irrelevant in the context of Defendant Smith's motion to reconsider, but it is not irrelevant to the disposition of this case, and the Court will turn to that motion now.

**b.** *Motion to Amend*

Plaintiff moves to amend her complaint to add allegations regarding several of her dismissed claims, and to reassert to her First Amendment claim against the County, which has been dismissed as a party to this action. Before addressing Plaintiff's proposed amendments, the Court will first note that Plaintiff cannot revive her claims against the County by way of her motion to amend her complaint.

"[A] district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe*, 326 F.3d at 514-15. In a case involving multiple claims against multiple parties, a judgment by a district court "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is an interlocutory judgment, regardless of how that judgment is designated. Fed. R. Civ. P. 54(b).[3] Plaintiff, therefore, was free to move the Court to reconsider its judgment dismissing the County or the State as parties to this action. Plaintiff did not do so. *Cf. Calvary Christian Ctr. v. City of Fredericksburg, Va.*, 710 F.3d 536, 540 (4th Cir. 2013) (finding that it was proper for a district court to not consider a motion to amend as a motion to vacate a judgment). Accordingly, the County remains a non-party to this action, and the Court need not consider the effectiveness or futility of Plaintiff's proposed amendments as against the County.

Defendant Smith, however, remains a party to this action (even if, due to his motion to reconsider, he will be dismissed from it by accompanying order). Therefore, the Court will consider the propriety of permitting Plaintiff to amend her complaint against him. Under *Laber*, the Court will grant Plaintiff's motion for leave to amend her complaint unless the motion is prejudicial, brought in bad faith, or futile. 438 F.3d at 426. Having read Plaintiff's proposed

---

[3] A district court can enter a final judgment as to one party in a case without adjudicating the entire case but only if the "court expressly determines that there is not just reason for delay." Fed. R. Civ. P. 54(b).

amendments, the Court finds that Plaintiff's amendments are futile, as the proposed second amended complaint would not survive a motion to dismiss, or even the same motion to dismiss that the State brought in December 2017. The Court will explain the futility of Plaintiff's proposed amendments in the order of her proposed amended complaint, beginning with her First Amendment retaliation claim, then proceeding to her negligence and abusive discharge claims, and finally her breach of contract claim.

### i. *Plaintiff's First Amendment retaliation claim*

Plaintiff's proposed amendments relating to her dismissed First Amendment retaliation claim (and briefing in support of her motion) suggest that Plaintiff misunderstands two aspects of the Court's earlier opinion. First, Plaintiff apparently believes that "a significant portion of this Court's rationale . . . was based on an implication that the 'griping' email correspondence . . . was sent to co-workers at the State's Attorney's Office." (Mot. Amend p. 3 ¶ 6, ECF No. 39.) The Court did state that is "seem[ed]" that Plaintiff's statements "were made to a coworker" and that the alleged reason for Plaintiff's termination "appear[ed] to be a venting email to a coworker." (Mem. at 15, 17.)[4] But the Court's opinion did not rest on the assumption that the emails were sent within the SAO. The Court's opinion rested on First Amendment law, under which the Court followed the three-prong test set forth in *McVey v. Stacy*, 157 F.3d 271 (4th Cir.

---

[4] These statements were based on Plaintiff's allegations that the emails "contained some employee frustration," were sent via her "work email" and were uncovered while Defendant Smith was "reviewing email correspondence related to an internal investigation." (Am. Compl. ¶¶ 11-13.) It is important to note that the Court did not forget the nature of the motion before it. In reviewing a motion to dismiss, the Court will make all inferences in favor of the nonmovant, but Plaintiff did not ask the Court to infer that the emails were sent outside her work, or even suggest that they were sent to anyone outside the SAO. So, although the Court will make inferences in favor of Plaintiff (and made plenty in its first opinion), the Court is not tasked with making up enough facts to get Plaintiff over a motion to dismiss. Furthermore, this Court is not the only institution to characterize Plaintiff's emails as "venting" emails, suffused with employee "frustrations," sent to other employees at the SAO. The ALJ who reviewed Plaintiff's case regarding her credentials at her new place of employment stated after considering evidence and hearing Plaintiff testify: "She made the mistake of venting her frustrations to another employee using her official work email. She regrets making derogatory comments about the county prosecutor in some of these emails." (ALJ Decision 3, ECF No. 2-6); *see Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (noting that when reviewing a motion to dismiss, a district court may consider "official public records [and] documents central to [a] plaintiff's claim").

1998), which is to be applied when determining if a government employee was fired in retaliation for speech in violation of the First Amendment. *See* 157 F.3d at 277-78. Under the first prong of *McVey*, the Court considers whether the employee's speech was protected under the First Amendment, and, as the Court noted in its earlier opinion, it "should, to some extent, consider the *purpose* behind a person's speech," when determining the answer. (Mem. at 16.) The Court then noted that "it [did] not seem that Plaintiff was seek[ing] to bring to light actual or potential wrongdoing or [a] breach of the public trust,' so much as she was simply venting to a coworker." (*Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 148 (1983).)

Even if the alleged emails were sent to someone outside the SAO, it *still* does not appear that Plaintiff was seeking to "bring to light actual or potential wrongdoing or a breach of the public trust." The First Amendment question here does not turn on organizational technicalities. It is not as though an email sent to a co-worker is not protected speech, whereas an email sent to a friend outside of work is. The Court explicitly noted in its earlier opinion that even though it "seem[ed] that these statements were made to a coworker, or at least not disseminated to the public, '[e]mployees . . . may receive First Amendment protection for expressions made at work.'" (Mem. at 15 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006).) What matters is content and context. What material did the alleged emails contain—watercooler complaints or serious criticism of a current State's Attorney?—and what was the purpose in sending them— "venting" about "employee frustration," or exposing a breach of the public trust? Plaintiff did not clearly present the alleged substance of the emails or to whom they were sent in her amended complaint, but the Court, making all inferences in the Plaintiff's favor, found that "a member of the community [would likely] be truly concerned with the employee's speech." (*Id.* at 16 (quoting *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 353 (4th Cir. 2000).)

Still, inferences in the Plaintiff's favor could not overcome the fact that Plaintiff did not allege that these emails were sent with the purpose of bringing public wrongdoing to light. Plaintiff's amendments do not cure that reading of her complaint.

Under the proposed amendments the Court is even *less* clear as to the substance of Plaintiff's emails: she now alleges that she is completely unaware of what emails Defendant Smith was referring to when he fired her. (Proposed Second Am. Compl. ¶ 15, ECF No. 39-1.) And the fact that these emails were possibly sent to people who did not work for the SAO does not change the fact that it still does not appear that Plaintiff was blowing a whistle or trying to root out public corruption.[5] Plaintiff did not allege that she sent any emails to, say, a reporter, a government official, her political representative, or a non-governmental watchdog group. In fact, it does not appear that Plaintiff expected anything to come of these alleged emails; they only came to light, it seems, after being unearthed in an unrelated internal investigation by the SAO. Even with Plaintiff's proposed amendments, the Court continues to find that it is a close question whether Plaintiff's speech was protected under the First Amendment, and "the dispositive fact is simply that the question *is* close. This first 'prong [of the *McVey* test] cannot be resolved under clearly established law,' and therefore Defendant Smith [would still be] entitled to qualified immunity from Plaintiff's Section 1983 claim." (Mem. at 16 (quoting *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017).)

---

[5] The Court notes that the emails were "possibly" sent to people outside the organization because even though Plaintiff has amended her complaint to allege that she "commented using her work email to individuals inside and members of the public outside the State's Attorney's Office," she has also amended her complaint to allege Defendant Smith's gesture to a stack of papers "remains Plaintiff's sole knowledge of the substance of the email communications to which Defendant Smith was referring" to when he fired her. (Prop. Second Am. Compl. ¶¶ 11, 15.) So, even under Plaintiff's proposed amended complaint Plaintiff does not allege that the emails for which she was fired were sent to individuals outside the SAO, only that at some point after 2014 she sent emails to some people outside the SAO, and was fired as a result of things she had said in some emails; possibly the same emails, possibly not.

13

This brings the Court to Plaintiff's second apparent misunderstanding of the Court's First Amendment retaliation discussion in its earlier opinion. The Court dismissed Plaintiff's First Amendment retaliation claim against Defendant Smith not because Plaintiff had failed to state a claim for First Amendment retaliation, but because Plaintiff had failed to state a claim that overcame Defendant Smith's qualified immunity. The Court found that whether Plaintiff's speech was protected was a *close* question—it did not decide that matter. The Court further found that, given Plaintiff's statements about the poor status of her employment relationship with Smith, the second prong of *McVey* "tip[ped] towards the Defendant,"—it did not decide that factor in the Defendant's favor. (Mem. at 16.) Plaintiff's proposed amendments do not change the fact that the Court "cannot, under clearly established law, resolve the question of whether Plaintiff's speech was protected," or whether her interest in speaking outweighed her employer's interest in maintaining efficient operations. (*Id.* at 18.) Therefore, Plaintiff's proposed amendments regarding her First Amendment retaliation claim are futile.[6]

### ii. *Plaintiff's negligence and abusive discharge claims*

The Court dismissed Plaintiff's negligence claim against Defendant Smith because he is entitled to immunity from tort claims (and any claim arising out of his disclosure of information to Plaintiff's future employers) under Maryland law. (*See* Mem. at 18-20.) Such immunity can be overcome if the Plaintiff demonstrates malice or gross negligence. Plaintiff did not sufficiently plead facts demonstrating malice or gross negligence, and therefore the Court found that Defendant Smith was immune from Plaintiff's negligence claim. The Court was unclear if Plaintiff intended to bring an abusive discharge claim, but to the extent that she did, the Court

---

[6] The Court will briefly note that even if the County had not been dismissed as a party to this action, Plaintiff's proposed amendments to her complaint would not be effective in resuscitating her First Amendment retaliation claim against the County either. The Court dismissed this claim against the County in its earlier opinion because Plaintiff did not allege that the County took any action with regard to Plaintiff's discharge from the SAO, and nothing in Plaintiff's proposed second amended complaint changes that conclusion.

found that the claim was not stated in a plain and concise manner sufficient to survive Federal Rule of Civil Procedure 8. The Court additionally noted that under Maryland law Plaintiff had to allege that her termination violated a "clear mandate of public policy." (*Id.* at 19-20.) But Plaintiff alleged that the reason for her termination was Defendant Smith's alleged violation of Plaintiff's First Amendment rights, which the Court had already explained was not, in fact, a "clear" violation of those rights, and thus not a violation of a clear mandate of public policy. (*See id.*) The Court accordingly dismissed Plaintiff's possible abusive discharge claim.

With regard to Plaintiff's negligence claim, it appears that Plaintiff followed the letter if not the spirit of the Court's opinion in her attempt to amend her complaint. The Court explained in its opinion that "[s]imply stating that a defendant has acted with 'malice' or 'gross negligence' will not overcome [the applicable state immunities]." (Mem. at 19.) In response, Plaintiff has added several conclusory statements that purport to demonstrate malice or gross negligence, but still fail to plausibly do so. For example, Plaintiff's proposed amended complaint states that "Defendant Smith's breaches of duty constitute gross negligence and/or malice in this case insofar as he knew the false allegations of dishonesty were false when he made them." (Proposed Second Am. Compl. ¶ 46.) In addition to the fact that this allegation does not actually allege Defendant Smith acted with gross negligence or malice,[7] "insofar" as Plaintiff attempts to make that allegation, it simply states legal conclusions.

Furthermore, on the malice front, Plaintiff took issue with the Court's characterization of Defendant Smith's behavior (it characterized Defendant Smith as acting with "discourtesy" in its earlier opinion) and argues that her proposed complaint paints a far more nefarious picture than one of mere discourtesy. But, even considering the additional new allegations, e.g. that

---

[7] Rather, it alleges that Defendant Smith acted with gross negligence or malice "insofar as he knew" that his allegations were false, which could be "not at all."

15

Defendant Smith made false accusations without investigating properly (Proposed Second Am. Compl. ¶ 44), or knew the falsity of the allegations when he made them (*id.* ¶ 46), the Court maintains that its original characterization of Defendant Smith's actions (as alleged by Plaintiff) is accurate. In its earlier opinion, the Court explained that

> As alleged, Defendant Smith's actions amount to, at worst, some discourtesy; not gross negligence or malice. Defendant Smith, after an investigation, accused Plaintiff of misuse of certain databases and then retracted that accusation – both in his "reconsideration" of his decision to fire Plaintiff, and in an email to Plaintiff's current employer. Additionally he, or someone who works at the SAO, truthfully answered a federal questionnaire which asked whether Plaintiff had resigned by mutual agreement due to specific problems.

(Mem. at 19.) The basic allegations underlying that characterization remain: Defendant Smith accused Plaintiff of misusing databases, Plaintiff and others present in the meeting denied that accusation, and he retracted it. After some confusion regarding her credentials with her current employer, Defendant Smith sent an email to her current employer to clear things up.[8] Plaintiff still does not allege that Defendant Smith was the person who put inaccurate information in her personnel file. (*See* Proposed Second Am. Compl. ¶ 21.) The Court's characterization of Defendant Smith's behavior as discourteous but not malicious is not some strained reading of Plaintiff's allegations; it is an accurate reading of those allegations and is completely in line with the findings of a different judge—namely, the ALJ who adjudicated Plaintiff's credentialing dispute after reviewing evidence and hearing Plaintiff testify on the record. The ALJ explained that Defendant Smith appeared to "reconsider his decision to fire her" after learning that the accusations were inaccurate, and sent an email to Plaintiff's current employer explaining the

---

[8] Plaintiff argues that Defendant Smith's efforts to clear things up were "impotent at best" but this argument misses the point. (*See* Mot. Amend at p. 6 ¶ 13.) Plaintiff must demonstrate that Defendant Smith acted *maliciously*, not ineffectively. Sending Plaintiff's employer an email explaining the nature of her departure may not have been the most effective way of resolving Plaintiff's credentialing problems (though this email did seem to save the day at Plaintiff's administrative hearing). What matters, though, is that Defendant Smith's decision to send this email strongly suggests that Defendant Smith did not act maliciously toward Plaintiff.

16

circumstances of Plaintiff leaving the SAO. (ALJ Decision 3-6, ECF No. 2-6.)[9] To be sure, it does not appear that Plaintiff and Defendant Smith got along very well, or that Defendant Smith was particularly kind to Plaintiff. (*See* Am. Compl. ¶ 16 (noting that her "employer-employee relationship with the [SAO] had been irreparably harmed"); ¶ 34 (discussing the "souring" of Plaintiff's relationship with Defendant Smith); ALJ Decision at 3 (noting that Plaintiff's "relationship with the county prosecutor . . . soured markedly").) But even given the allegations in Plaintiff's proposed second amended complaint, the Court cannot find "malice," any more than it can find gross negligence. Accordingly, Plaintiff's proposed amendments in regard to her negligence claim would be futile.

Plaintiff's new allegations regarding her abusive discharge claim are futile as well. In Plaintiff's proposed second amended complaint she has separated out her abusive discharge and negligence claim, heeding (it appears) the Court's admonition regarding Plaintiff's earlier lack of clarity regarding her abusive discharge claim. Unfortunately for Plaintiff, creating a new heading to house several new allegations will not resuscitate her claim. As the Court alluded to in its earlier opinion, Plaintiff's abusive discharge claim is really a state law analogue of her First Amendment retaliation claim: she is arguing that Defendant Smith's decision to terminate her employment due to an exercise of her First Amendment rights is a violation of a clear mandate of public policy. As discussed above, Defendant Smith's alleged actions were not a clear violation of Plaintiff's First Amendment rights, and were not a violation of a clear mandate of public policy. The Court did not dwell on Plaintiff's abusive discharge claim in its earlier opinion because it was unclear if Plaintiff intended to bring such a claim, but the Court will now add one

---

[9] The Court may consider documents outside the pleadings when reviewing a motion to dismiss when those documents are "official public records, central to [the] plaintiff's claim, [or] sufficiently referred to in the complaint so long as the authenticity of those documents is not disputed." *Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006).

additional reason that Plaintiff's abusive discharge claim would fail: Plaintiff's proposed allegation that she was "discharged by Defendant Smith" is contradicted by her own allegations and the public record. (Proposed Second Am. Compl. ¶ 50.) Plaintiff alleges that she resigned from the SAO, and not that Defendant Smith fired her. (*Id.* ¶ 16.) Even if Plaintiff would argue that she was forced to resign, that argument appears to be contradicted by her testimony before the ALJ, who found that "*[s]he* offered to resign." (ALJ Decision at 4 (emphasis added).) Plaintiff's amendments regarding her abusive discharge claim are futile.

### iii. *Plaintiff's breach of contract claim*

Plaintiff does not seek to change much regarding her breach of contract claim. Her proposed additional allegations only amend her request for damages, and nothing about the underlying claim. (*See* Proposed Second Am. Compl. ¶ 59.) These amendments are futile because they do not cure the defect discussed above—that Plaintiff does not sufficiently allege Defendant Smith entered into the alleged contract in his individual capacity. Therefore, in the absence of an alleged written contract, Defendant Smith, acting on behalf of the State, is immune.[10]

The Court notes that Plaintiff filed her motion for leave to file a second amended complaint twenty days after Defendant Smith filed his motion for reconsideration, and four days after she had responded in opposition to that motion. Therefore, Plaintiff was well aware of Defendant Smith's legal theory as to why the breach of contract claim should be dismissed, and

---

[10] The County is not a party to this action, but the Court will briefly note that any amendments to Plaintiff's breach of contract claim (which is brought against "ALL Defendants" including the County) would be futile as against the County as well. Plaintiff still proposes to allege that the County is a party because "Frederick County was a joint employer of Plaintiff," despite the Court's explanation that the State's Attorney is a creature of the State under Maryland law. Plaintiff also still alleges that the County "ratified the Agreement with a document written by and with the authority of County Human Resources Director Mitch Hose." (Second Proposed Am. Compl. ¶ 56.) For the reasons explained in the Court's earlier opinion, the document to which Plaintiff refers is not plausibly a ratification of the alleged verbal agreement between Plaintiff and Defendant Smith. (*See* Mem. at 8-9.) For example, the document states that Plaintiff is not eligible for county rehire, which is not a term of the alleged contract.

yet did not propose any substantive amendments to her complaint that would conflict with that legal theory.

## IV. *Conclusion*

The Court misapprehended the nature of Defendant Smith's legal argument with regard to the breach of contract claim and therefore it will reconsider its opinion and the Order that it signed on February 28. That Order remains valid except with respect to paragraph three. The Court will now grant the State's motion to dismiss (ECF No. 25) in its entirety, and dismiss Defendant Smith as a party to this case. Accordingly, the entirety of Plaintiff's amended complaint will be dismissed, and the Clerk will be directed to close this case. The Court finds that the amendments in Plaintiff's proposed second amended complaint are futile and Plaintiff's proposed second amended complaint would not survive a motion to dismiss. Accordingly, Plaintiff's motion for leave to file a second amended complaint will be denied by accompanying order.

DATED this 1st day of May, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge